IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO MURILLO,<br><br>               Petitioner,<br><br>   v.<br><br>J. SOTO,<br><br>               Respondent. | Case No. 1:13-cv-01541 LJO MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by R. Todd Marshall of the office of the Attorney General.

I. **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on April 8, 2010, for first degree burglary and lewd and lascivious acts upon a child under the age of 14. (Clerk's Tr. at 354.) Petitioner was sentenced to an indeterminate sentence of twenty-six (26) years in state prison under

the California Three Strikes Law.  (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which affirmed the judgment on January 17, 2012.  (Lodged Docs. 1, 17-19.)  On April 13, 2012, the California Supreme Court denied review. (Lodged Docs. 2-3.) Petitioner did not seek collateral review of the petition in state court.

Petitioner filed the instant federal habeas petition on July 16, 2013.  (Pet., ECF No. 1.) Petitioner presents a single claim for relief in the instant petition.  Petitioner alleges that he was denied his constitutional right to an impartial jury due to unlawful discrimination by the prosecution during jury selection. (Id.)  Respondent filed an answer to the petition on July 29, 2014. (ECF No. 33.) Petitioner did not file a traverse. The matter stands ready for adjudication.

## II.  **STATEMENT OF THE FACTS**[1]

> An 11-year-old girl at home asleep in her bed awoke to find her completely naked next-door neighbor, Jose Antonio Baltierra Murillo, holding her hands over her head and touching her inappropriately. A jury found him guilty of a lewd or lascivious act during the commission of a first degree burglary. On appeal, he argues that jury selection error requires reversal. We affirm.
>
> BACKGROUND
>
> On March 12, 2010, a three-count second amended information charged Murillo with committing three crimes on November 24, 2008 – two counts of lewd or lascivious acts on children under the age of 14 (counts 1 & 2; Pen. Code, § 288, subd. (a))[FN1] and one count of first degree burglary (count 3; §§ 459, 460, subd. (a)). The information alleged that he perpetrated counts 1 and 2 during the commission of a first degree burglary with the intent to commit those acts (former § 667.61, subds. (c)(8), (d)(4)), that he committed those acts against more than one victim (former § 667.61, subds. (c)(8), (e)(5)), and that he served a prior prison term (§ 667.5, subd. (b)).[FN2]
>
> **FN1**: Except as otherwise noted, later statutory references are to the Penal Code.
>
> **FN2**: A former version of section 667.61 was in effect at the time of the

---

[1] The Fifth District Court of Appeal's summary of the facts in its January 17, 2012 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

> commission of the crimes. (Amended by Initiative Measure (Prop. 83, § 12, approved Nov. 7, 2006, eff. Nov. 8, 2006).)
>
> On April 7, 2010, Murillo waived his right to trial by jury on the prison-term prior. The next day, the jury returned the following verdicts:
>
> • Count 1: Guilty as charged; allegation of perpetration of the crime during commission of a first degree burglary true; allegation of commission of lewd or lascivious acts against more than one victim not true;
>
> • Count 2: Not guilty of the charged felony; not guilty of the lesser included offense of misdemeanor battery (§ 242);
>
> • Count 3: Guilty as charged.
>
> Later that day, the court found the prison-term prior true.
>
> On May 7, 2010, the court sentenced Murillo to an aggregate term of 26 years to life consisting of an indeterminate term of 25 years to life on count 1 (former § 667.61, subds. (a), (c)(8), (d)(4)), consecutive to a determinate term of one year on the prison-term prior (§ 667.5, subd. (b)), and imposed and stayed sentence on count 3 (§ 654).

People v. Murillo, 2012 Cal. App. Unpub. LEXIS 340, 1-3 (Jan. 17, 2012).

## III.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. (Pet.) In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, this Court has jurisdiction over the instant action.

### B.   Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment

of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7. Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (quoted by Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Id.

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then

it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. (emphasis added). To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3.     Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).

## IV. REVIEW OF PETITION

### A. Claim One: Unlawful Discrimination During Jury Selection

Petitioner claims that his right to equal protection of the laws was violated when the prosecution used five of his ten pre-emptory challenges to dismiss Hispanic jurors. (Pet. at 6.)

#### 2. State Court Decision

The claim was denied in a reasoned decision by the Court of Appeal (Lodged Doc. 1.) and in a subsequent petition for review filed with California Supreme Court (Lodged Doc. 3.) "[W]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804. Since the Court of Appeal was the last court to issue a reasoned opinion on this issue, this Court "looks through" the California Supreme Court decision to the reasoned analysis of the Court of Appeal. In the last reasoned decision denying Petitioner's claim, the appellate court explained:

> DISCUSSION
>
> Murillo claims the court "committed reversible error by failing to find a prima facie case of unlawful discrimination by the prosecution during jury selection." The Attorney General characterizes his argument as "specious."
>
> A prosecutor's use of peremptory challenges to excuse a prospective juror on the basis of group membership violates a criminal defendant's federal constitutional right to equal protection of the laws and state constitutional right to trial by a jury drawn from a representative cross-section of the community. (People v. Gray (2005) 37 Cal.4th 168, 183-184; 14th Amend., U.S. Const.; art. I, § 16, Cal. Const.)
>
> The crux of Murillo's argument is that in response to his attorney's "statistical disparity" challenge to the prosecutor's use of "five of his 10 peremptory challenges to strike Hispanics" the court found that the defense "had failed to make a prima facie case" but "did not ask the prosecutor for an explanation for his strikes" and instead made "the determination based on its own explanation." That, he argues, was reversible error. To analyze whether the record shows a constitutional violation, we turn, first, to the record and, second, to the law.
>
> After a day and a half of voir dire, Murillo's attorney made a Batson-Wheeler[fn3] motion outside the presence of the prospective jurors. He

stated that "50 percent" of the 10 peremptory challenges that the prosecution had exercised were of "Hispanic people" but acknowledged "that there is at least two remaining Hispanic people currently in the box." He added, "I don't know how many we have left of potential jurors, but it seems that it's a large number."

**FN3**: Batson v. Kentucky (1986) 476 U.S. 79 (Batson); People v. Wheeler (1978) 22 Cal.3d 258 (Wheeler), overruled in part by Johnson v. California (2005) 545 U.S. 162, 168 (Johnson).

The court inquired of Murillo's attorney whether, "other than the mere number," there was "anything about the questioning or anything about these specific individuals other than their race" that led him to "believe that this was based on race as opposed to any other reason." He replied, "There was nothing that I heard. Just basing it on the fact of the matter statistically that [the prosecutor] is using his peremptories on."

The court, noting its duty "to make an initial determination whether or not there's a prima facie case" before "any determination as to whether the reasons are appropriate," summarized the status quo as "a couple of Hispanics still remaining on the jury" with no information of which the court was aware "that race is an issue in the case. Not all of the members of the identified ethnic group that is Hispanic are challenged."

Disclaiming any knowledge of any "dispirit [sic] voir dire as to the individuals excused versus other individuals," the court expressed the belief that "the challenging party passed when individuals were still a member of the jury." Asked by the court for comment, the prosecutor noted "that there still remain in the box two Hispanics" he had not excused, who did "not constitute more than half the people" whom he had excused. He noted that 10 of the 11 people the defense had excused were Caucasian.

After taking "a few minutes" to review notes with reference to "each of the challenged individuals to determine whether they differ materially from the individuals who remain unchallenged," the court found there was no prima facie case and invited the prosecutor to make a record of his reasons for his peremptory challenges. He addressed the stricken prospective jurors one by one.

Prospective juror "****26," the prosecutor stated, "expressed to us in private that she had consensual sex when she was 12 years old with a 19 year old. Did not appear to express any regret or remorse, at least that was my take on that. She also seemed leery, maybe it's too strong of a word, but when she told the story of her own child making up lies that she specifically said something about being accused of feeding spiders or something to that effect to school officials. I think jaundiced her view and made her more skeptical, perhaps not receptive to a child's testimony."

Prospective juror "****47," the prosecutor stated, had a discussion with him "either about reasonable doubt or circumstantial evidence" in which he said "he would want an absolute proof or something to that effect. And my memory of it was he would not value or weigh circumstantial evidence equally as opposed to direct. He wanted the case proved to him beyond a reasonable doubt that was a direct question to him."

Prospective juror "****43," the prosecutor stated, "did not have a high school education. I would note that the 12 in the panel right now all have at least a high school education. Also when I asked her what her reaction [sic] when hearing the charges, she said that she had somewhat of an emotional response, which made me wonder if she could hear the evidence impartially."

Prospective juror "****54," the prosecutor said, was "similar to ****47. I had a direct exchange with him and I don't recall if it was circumstantial [sic] or reasonable doubt, but he at least in response to one of my answers to the questions indicated that he would not be able to follow the law. And I don't recall off the top of my head if was [sic] because he said he would not give equal weight to circumstantial evidence, or if he would need a higher burden of proof. But there was a direct colloquy between him and myself." After the court added, "And an issue with one witness also," the prosecutor responded, "And one witness, and that may have been what I was thinking of."

Prospective juror "****33," the prosecutor said, "spoke about a friend of hers, I don't remember which part it was, that there was a criminal case brought against an 18 year old for having sex with a 17 year old. I questioned whether she did not answer directly the way her demeanor was when she spoke about it told me that she had some skepticism with the justice system with regards to prosecuting an 18 year old for having sex with a 17 year old. I would also note that her phone went off while we were on the record which gave me cause and concern that she could follow Court's instructions."

The prosecutor concluded, "Those are five of the six excused." Asked by the court if he wanted to be heard further, Murillo's attorney replied in the negative. The next day, the jury was sworn without either party exercising any additional peremptory challenges.

On a Batson-Wheeler motion, "the issue is not whether there is a pattern of systematic exclusion; rather, the issue is whether a particular prospective juror has been challenged because of group bias." (People v. Avila (2006) 38 Cal.4th 491, 549.) At trial, the court and counsel follow a three-step constitutional analysis of peremptory challenges. First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, if the defendant makes out a prima facie case, the burden shifts to the prosecution to give an adequate explanation of the peremptory challenges by offering permissible neutral justifications. Third, if a neutral explanation is tendered, the court must decide whether the opponent of the peremptory challenges has proved purposeful discrimination. (Johnson, supra, 545 US. at p. 168.)

With reference to the first of those three steps, the defendant must show "that under the totality of the circumstances it is reasonable to infer discriminatory intent." (People v. Kelly (2007) 42 Cal.4th 763, 779 (Kelly).) Certain types of evidence may be especially relevant. (Id. at p. 779.) The party may show that his or her opponent either struck most or all of the members of the identified group from the venire or used a disproportionate number of his or her peremptory challenges against the group. (Ibid.) The party may demonstrate that the prospective jurors in question share only

one characteristic – membership in the group – and that in all other respects they are as heterogeneous as the community as a whole. (Ibid.) When appropriate, that showing may be supplemented by circumstances like the failure of the party's opponent to engage the prospective jurors at issue in more than desultory voir dire or to ask those prospective jurors any questions at all. (Ibid.) Finally, the defendant need not be a member of the group at issue, but if he or she is, especially if the victim is a member of the group to which a majority of the remaining jurors belong, those facts are relevant, too. (Id. at pp. 779-780.)

Murillo and the 11-year-girl were both members of the group at issue. Even so, there is no showing that the five prospective jurors at issue shared only the characteristic of membership in that group but otherwise were as heterogeneous as the community as a whole. To the contrary, just as the prosecutor's comments at the hearing on the motion warrant careful attention, so, too, as the record of voir dire shows, do the comments of those prospective jurors.

Prospective juror ****26 stated she that was not sure if she had child care since her regular nanny had accepted a new position from someone else, she had no family in the area, she had been laid off months ago, and she had not yet found new employment. Three years ago, she was attacked by someone who made bodily contact with her trying to "kiss, lick, touch, things like that." At age nine, she found out her father had molested her three oldest half-sisters. Although she thought nothing about those incidents would affect her ability to fairly decide the case, she said she was "expecting to hear both sides. So I don't know if I'm going to be able to make a decision unless I hear both sides."

Prospective juror ****47 said he had 10 years of experience as a court interpreter, mostly in criminal cases, two of which were sexual abuse cases "you just don't forget." He characterized sexual abuse cases without "definite proof that what is alleged actually happened, unless you have an eyewitness," as "very nebulous," "never clear," and never "black and white." He acknowledged that he would have difficulty finding the defendant guilty if there were no eyewitness. Asked whether anything in his experience with sexual abuse cases "might bring up some memories" in his mind, he said, "You know, the mind, you know, plays a lot of tricks. It could or could not," but he added that he thought he could listen to the evidence impartially. As a burglary victim, he felt "powerless" and "helpless" but said he thought the experience would not affect his ability to serve as a juror. He said he did not want to hear circumstantial evidence because, "if the case was real strong, air tight, there would be no need for that word." The prosecutor asked him whether, if he were to see someone "covered in moisture" and "shaking it off," he would need to see it raining before he could believe it was raining outside. "I want to see the rain," he replied. He was a law school graduate and an applicant for admission to the state bar.

Prospective juror ****43 said she had "some high school" and had four children, the youngest of whom, age eight, needs "plenty of attention." She felt "bothered" when the judge read the charges the defendant was facing. "To hear something like that. Like every other mother would feel or father, you know, with having two girls," she said, but she said she thought she could be fair and impartial.

Prospective juror ****54 said jurors had to be "open minded and hear all the evidence" but when asked, "And what if you're convinced of half, is that going to be keeping your mind open to the other half?," he said he "wasn't sure" if there were "three alleged convictions." When asked, "Three alleged accusations?," he said, "I wasn't sure of the third one." The court interjected, "Third one is burglary." When asked if he would be "able to convict on the testimony of one witness provided you believed that witness," he said he thought so, but he added, "I'd find it hard just believing that one witness." The prosecutor asked if there was nothing to contradict the witness, "Do you need more?" He replied, "I think I do need more."

Prospective juror ****33 said she had a "bladder problem" requiring her to limit water intake. "I got a bad, bad problem," she emphasized. "Bad." Asked if the jailing of an 18-year-old friend for molesting his 17-year-old girlfriend even though both consented would have any effect on her ability to fairly decide the case, she replied, "It's going to be hard."

Here, the inquiry stops at the first step, since the court found no prima facie case of discriminatory purpose.[FN4] Even so, our duty after denial of a Batson-Wheeler motion without a finding of a prima facie case is to consider the entire voir dire record before us. (People v. Howard (1992) 1 Cal.4th 1132, 1155.) Since Batson-Wheeler motions call on a court's personal observations, we give considerable deference to the court's rulings. (Howard, supra, at p. 1155, citing, e.g., Batson, supra, 476 U.S. at p. 88.) If the record suggests grounds on which the prosecutor reasonably might have challenged the prospective jurors at issue, our duty is to affirm. (Howard, supra, at p. 1155.)

**FN4**: Murillo argues, "The law is settled that *once the defense has stated the reasons for the objection*, the hearing progresses to stage two, the 'explanation' stage, where the prosecution may offer the reasons for the challenges." (Italics added.) He is mistaken. "*Once the defendant makes the requisite showing*, the burden shifts to the State to explain adequately the racial exclusion." (Batson, supra, 476 U.S. at p. 94, italics added.) "The court's invitation to the prosecutor to state for the record his reasons for excusing the prospective jurors in question did '"not convert [this] first-stage Wheeler/Batson case into a third-stage case."'" (People v. Clark (2011) 52 Cal.4th 856, 908, fn. 13.)

On the basis of our independent review, we conclude that the record reflects neutral grounds for the peremptory challenges at issue, not that the record supports an inference that the prosecutor excused the five jurors at issue for a discriminatory purpose. (Johnson, supra, 545 U.S. at p. 168; Kelly, supra, 42 Cal.4th at p. 779.) The court did not err in denying Murillo's Batson-Wheeler motion.[FN5]

**FN5**: After finding no prima facie case, the court, though not required to do so, commendably engaged in "the better practice" of having the prosecutor put on the record neutral explanations for his peremptory challenges to assist constitutional analysis both at trial and on appeal. (People v. Bonilla (2007) 41 Cal.4th 313, 343, fn. 13.)

People v. Murillo, 2012 Cal. App. Unpub. LEXIS 340, 1-15 (Jan. 17, 2012).

3.   Analysis

Evaluation of allegedly discriminatory peremptory challenges to potential jurors in federal and state trials is governed by the standard established by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

In Batson, the United States Supreme Court set out a three-step process in the trial court to determine whether a peremptory challenge is race-based in violation of the Equal Protection Clause. Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. Id. That is, the defendant must demonstrate that the facts and circumstances of the case "raise an inference" that the prosecution has excluded venire members from the petit jury on account of their race. Id. If a defendant makes this showing, the burden then shifts to the prosecution to provide a race-neutral explanation for its challenge. Id. At this second step, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Id., quoting Hernandez v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). Finally, the third step requires the trial court to determine if the defendant has proven purposeful discrimination. And "[s]ince the trial judge's findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson, 476 U.S. at 98, n.21.

In this case, the state court's determination that under Batson there was no racial pretext in the prosecution's exercise of five peremptory strikes to prospective Hispanic jurors. Petitioner challenges the use of five of the prosecution's ten peremptory strikes against Hispanic jurors, and alleges based on the statistical disparity, the state court's determination that he did not make a prima facie showing was in error. (Pet. at 45.) Petitioner contends that the use of so many strikes against the relatively few Hispanics on the jury created an inference of discrimination. Finally, Petitioner alleges that the trial

court followed improper procedure by proceeding to the second "explanation" stage of the Batson procedure and providing its own analysis as to why there was no improper discrimination, rather than providing the prosecution an opportunity to explain.

As described above, the trial court denied the objection stating that Petitioner did not meet his burden to show that the peremptory strike created an inference of discrimination. Murillo, 2012 Cal. App. Unpub. LEXIS 340 at 1-15. In reaching its determination that Petitioner had not shown a prima facie case of discrimination, the trial court relied on the fact that Petitioner and the five jurors that were dismissed are Hispanic. (Augmented Rep. Tr. at 281.) Further, the court noted that the both the victim and Petitioner were both Hispanic, that the court was not aware that race was a relevant issue to the case, and that not all the members of the identified ethnic group were challenged by the prosecution. (Id.)

On appeal, the state court found that in viewing the totality of the relevant circumstances, that there was not an inference of discrimination. Murillo, 2012 Cal. App. Unpub. LEXIS 340 at 1-15. At the first step of the Batson analysis, Petitioner must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Johnson v. California, 545 U.S. 162, 168, 125 S. Ct. 2410, 162 L. Ed. 2d 129 (2005) (footnote omitted). In order to establish a prima facie case of racial discrimination, a petitioner must show that "(1) the prospective juror is a member of a "cognizable racial group," (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motved by race." Boyd v. Newland, 467 F.3d 1139, 1143 (9th Cir. 2006) (citing Batson, 476 U.S. at 96, and Cooperwood v. Cambra, 245 F.3d 1042, 1045-46 (9th Cir. 2001)). A prima facie case of discrimination "can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.'" Johnson v. California, 545 U.S. at 169 (quoting Batson, 476

U.S. at 94.)[1] In evaluating whether a petitioner has established a prima facie case, a reviewing court should consider the "'totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike." Boyd, 467 F.3d 1146 (quoting Batson, 476 U.S. at 94, 96). The Petitioner's burden at the first Batson step is "not an onerous burden." Crittenden v. Ayers, 624 F.3d 943, 955 (9th Cir. 2010). As the Supreme Court clarified in Johnson v. California, 545 U.S. at 170:

> We did not intend the first step to be so onerous that a defendant would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to know with certainty — that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

In this case, Petitioner objected to the peremptory strikes as racially motivated based on Petitioner and the stricken juror's membership in a cognizable racial group. A peremptory strike of an prospective juror of a cognizable racial group does not, by itself, support an inference that discrimination occurred, see United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994), but it is afforded weight in combination with the other factors offered by defense counsel.

"[C]omparative juror analysis may be employed at step one to determine whether the petitioner has established a prima facie case of discrimination." Crittenden, 624 F.3d at 956. However, none was provided here.[2] With a meager record, it can be difficult to determine if a prima facie case of discrimination occurred. It is noted that striking of even a single juror can be sufficient to show an inference of discrimination:

> We have held that the Constitution forbids striking even a single prospective juror for a discriminatory purpose. But just as "one" is not a magic number which establishes the absence of discrimination, the fact

---

[1] In Batson, defense counsel timely objected to the prosecutor's use of peremptory challenges because they resulted in striking "all black persons on the venire." Id., 476 U.S. at 100. The Supreme Court held that this was a sufficient basis to find an inference of racial discrimination and that the trial court erred when it "flatly rejected the objection without requiring the prosecutor to give an explanation for his action." Id.

[2] However, the trial judge "noted no disparate[sp] vior dire as to the individuals excused versus the other individuals." (Aug. Rep. Tr. at 281-82.)

14

> that the juror was the one Black member of the venire does not, in itself, raise an inference of discrimination. Using peremptory challenges to strike Blacks does not end the inquiry; it is not per se unconstitutional, without more, to strike one or more Blacks from the jury. A district court must consider the relevant circumstances surrounding a peremptory challenge.

United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994) (citations omitted).

Further, the Ninth Circuit has held that a defendant can make a prima facie showing based on a statistical disparity alone. Williams v. Runnels, 432 F.3d 1102, 1107 (9th Cir. 2006). In Paulino v. Castro, 371 F.3d 1083, 1091 (9th Cir. 2004), the Ninth Circuit found an inference of bias where the prosecutor had used five out of six peremptory challenges to strike African-Americans. 371 F.3d at 1091. In Fernandez v. Roe, 286 F.3d 1073, 1077-80 (9th Cir. 2002), the Ninth Circuit found an inference of bias where four of seven Hispanics and two African-Americans were excused by the prosecutor. In Turner v. Marshall, 63 F.3d 807, 812 (9th Cir. 1995), the Ninth Circuit determined there was a prima facie showing of discrimination where the prosecutor exercised peremptory challenges to exclude five out of a possible nine African-Americans.

Here, five of seven Hispanic jurors were struck. It is without question that the statistical disparity created by dismissing most of the Hispanic jurors could have provided a basis for a prima facie showing of an inference of bias. Further, if reviewing this claim *de novo*, it is a strong possibility that the state court's finding at the first step of the Batson inquiry, that no prima facie of an inference of bias existed despite five of the seven Hispanic jurors being struck would be reversed. However, that is not the question presented to this Court. This Court must determine, whether the state court's denial of Petitioner's claim was an unreasonable application of relevant Supreme Court law under Batson in light of the framework set forth by AEDPA.

With respect to the prima facie inquiry, the determination made by the trial court involves a mixed question of law and fact. The Court must determine whether the facts presented are sufficient to meet the requirements of the legal rule concerning a prima facie case. Tolbert v. Page, 182 F.3d 677, 681 n.6 (9th Cir. 1999) (en banc). Credibility

findings a trial court makes in a Batson inquiry are generally entitled to great deference. Batson, 476 U.S. at 98 n.21. A trial court's credibility findings are reviewed in a federal habeas proceeding under 28 U.S.C. § 2254(d)(2). Rice v. Collins, 546 U.S. at 338 (declining to decide whether § 2254(e)(1) also applied). Pursuant to § 2254(d)(2), a habeas petition may be granted only if the state court's conclusion was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For relief to be granted, a federal habeas court must find that the trial court's factual determination was unreasonable such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient. Rice, 546 U.S. at 340-42. Further, the court "must give 'double deference' to the trial court's credibility finding where that finding was affirmed by the state court of appeals." Aleman v. Uribe, 723 F.3d 976, 983 (9th Cir. 2013) (citing Jamerson v. Runnels, 713 F.3d 1218, 1234 (9th Cir. 2013).).

Here, Petitioner has provided little information upon which to determine if there was a prima facie inference of discrimination. Cullen v. Pinholster, 131 S.Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011) (In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."). The prosecution struck ten jurors, of whom five were Hispanic, but allowed two Hispanic jurors to remain on the panel.

Despite the statistical disparity, the state court noted that the prosecution did not challenge two of the seven Hispanic people in the jury box, and that a "large number" of the potential jurors were Hispanic. Further, the state appellate court noted that the trial court found that it had no evidence "that race was an issue in the case," that the voir dire directed by the prosecution towards excused individuals was no different than that directed to other jurors, that the prosecution passed when Hispanic members of the jury remained, and that the prosecution only used half of its peremptory challenges to excuse Hispanic members of the jury. People v. Murillo, 2012 Cal. App. Unpub. LEXIS 340 at 2.

The state court's finding that a prima facie case of discrimination was not made was reasonable based on the record. A fairminded jurist could conclude that although the five jurors were Hispanic, information revealed in the voir dire and jury questionnaires raised significant, race-neutral questions concerning the jurors' experience with, or attitudes toward, sexual crimes and the credibility of child witnesses in a case in which both were anticipated to be at issue. With regard to prospective juror 26, she indicated that her three oldest half-sisters had been molested by her father, and placed some level of responsibility on her half-sisters.[3] (Aug. Rep. Tr. at 177-78.) She also indicated that children can make up stories. (Id. at 186-87.) Prospective juror 33, in addition to having a "bad, bad [bladder] problem," also indicated that she thought it was unfair when a friend who was 18 was convicted of statutory rape from a consensual encounter with a 17 year old, and that it would be hard to fairly decide the case. (Aug. Rep. Tr. at 163, 166-67.) Prospective juror 43 indicated that she was bothered when she was read the charges against Petitioner. (Id. at 201.)

Prospective juror 47 indicated that he would have difficulty relying on circumstantial evidence and prospective juror 54 indicated that he would have difficulty being able to convict based on the testimony of only one witness. (Id. at 242-44.)

"Excluding jurors because of their profession, or because they were acquitted in a prior case, or because of a poor attitude in answer to voir dire questions is wholly within the prosecutor's prerogative." United States v. Thompson, 827 F.2d 1254, 1260 (9th Cir.1987). "Evidence in the record of objective reasons to strike a juror implies that racial bias did not motivate the prosecutor." Boyd v. Newland, 393 F.3d 1008, 1013 (9th Cir.1987). Applying AEDPA review, the state court reasonably found that considering all

---

[3] [Prosecutor]: … Was your father ever charged?
Prospective Juror Number ****26: No.
[Prosecutor]: Do you have any lingering feelings?
Prospective Juror Number ****26: No. It wasn't – he admitted to his faults, he said he was sorry. It was my sisters' choice. They were in high school, they didn't want any additional attention to everybody to know and find out, and they just wanted everything to go on as regular. So my mom continued to stay married with him many years after. (Aug. Rep. Tr. at 177-78.)

1  the circumstances, no prima facie case had been made out.

2  Even if the state court's decision that there was no prima facie case was
3  unreasonable and the Batson issue were reviewed *de novo*, the record neither requires
4  nor supports a conclusion that the prosecutor's challenges were racially motivated as
5  required at step three of the Batson analysis. Both potential jurors 26 and 33's negative
6  perspective with regard to sexual crimes involving minors provided a valid, race-neutral
7  basis for peremptory challenges. Similarly, potential juror 47's statement that she was
8  bothered by the charges indicated that she may have had a difficult time keeping an
9  open mind. Finally, prospective jurors 47 and 54 indicated that they may hold the
10 prosecution to a higher evidentiary standard than required to prove the charges. The trial
11 court necessarily observed the interaction among the attorneys and potential jurors and
12 made conclusions as to the credibility of the prosecutor, who offered his reasons. The
13 Court concludes that Petitioner has not shown that the prosecutor's exercise of the
14 peremptory challenges was racially motivated.

15 Accordingly, it will be recommended that the Court deny Petitioner's claim that the
16 prosecutor's exercise of peremptory challenges violated his right to equal protection of
17 the law. Petitioner fails to demonstrate that the state court rejection of his claim "resulted
18 in a decision that was contrary to, or involved an unreasonable application of, clearly
19 established Federal law, as determined by the Supreme Court of the United States." 28
20 U.S.C. § 2254(d).

21

22 **IV.    RECOMMENDATION**

23 Accordingly, it is hereby recommended that the petition for a writ of habeas
24 corpus be DENIED with prejudice.

25 This Findings and Recommendation is submitted to the assigned District Judge,
26 pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after
27 being served with the Findings and Recommendation, any party may file written
28 objections with the Court and serve a copy on all parties.  Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   May 28, 2015                         /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE